586 P.2d 607 (1978)
In the Matter of F.S., a minor.
No. 4015.
Supreme Court of Alaska.
November 9, 1978.
*608 Geoffrey G. Currall, Dist. Atty., Ketchikan, and Avrum M. Gross, Atty. Gen., Juneau, for petitioner State of Alaska.
Harold M. Brown, Ziegler, Cloudy, Smith, King & Brown, Ketchikan, for respondent.
Before BOOCHEVER, C.J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

OPINION
BOOCHEVER, Chief Justice.
This case presents difficult questions concerning the waiver of juvenile jurisdiction. *609 A petition charging F.S., a minor, with first degree murder was filed on February 1, 1978. Thereafter, the state filed a motion for waiver of juvenile jurisdiction pursuant to AS 47.10.060(a)[1] and Children's Rule 3.[2] On May 1, 1978, Judge Stewart denied the state's motion, concluding that F.S. was amenable to treatment. The state then filed a petition for review. On June 16, 1978, we granted the petition for review[3] and issued an order reversing the superior court's order denying the motion for waiver of juvenile jurisdiction. At that time, we stated that an opinion would follow.
The statement of facts, as alleged in the state's petition for review, is as follows. On January 31, 1978, G.G., a nine-year-old female, was walking home from school on a trail through the woods. F.S., a seventeen-year-old male, was also walking from school on the trail. F.S. grabbed G.G., holding his hand over her mouth to stifle her screams, and carried her deeper into the woods. He intended to sexually molest her. When she pleaded with him to let her go, he released her momentarily.
Then, his "mind" told him to kill her. He again grabbed her. G.G. struggled, but only succeeded in scratching him. According to F.S., although it seemed to take hours to kill her, he believed that it really took only about twenty minutes.
He then removed her clothing and tried to penetrate her vagina, but could not. He masturbated and ejaculated on her nude body.
Next, he searched her bag and found a tennis ball. He shoved it between her legs in the genital area and left. Her body was found later that night. The next day, F.S. admitted killing G.G.
The state filed a petition charging F.S. with first degree murder and filed a motion for waiver of juvenile jurisdiction. Following a hearing on the motion, Judge Stewart denied it. The state filed a petition for review asking this court to reverse Judge Stewart's ruling.
In its petition for review, the state raises several specifications of error; namely:
1) That the court erred in using age twenty to determine the probability of rehabilitation,
2) That the court improperly considered the minor's consent to an additional one-year period of confinement,
3) That the court applied an improper burden of proof on the state,
4) That the court erred in excluding evidence that F.S. had committed previous sexual assaults, and
5) That the court abused its discretion in denying the state's motion for waiver of juvenile jurisdiction. We will address each of these issues separately.

I. THE PROPER AGE FOR DETERMINING AMENABILITY TO TREATMENT
The superior court used the age of twenty to determine whether F.S. was amenable to treatment as a juvenile. The state argues that the court should have used age nineteen as the determinative age. The state's argument is premised upon what the state considers is a conflict between AS 47.10.080(b)(1) and AS 47.10.060(d). We find no conflict between the two provisions and hold that age twenty is the determinative age.
*610 AS 47.10.060(d) provides in pertinent part:
(d) A minor is unamenable to treatment under this chapter if he probably cannot be rehabilitated by treatment under this chapter before he reaches 20 years of age.
The statute is clear on its face that age twenty is the proper age for determining whether a minor is amenable to treatment.
Notwithstanding the clear language of the statute, the state contends that because AS 47.10.080(b)(1)[4] limits the court's jurisdiction to commit the minor to the Department of Health and Social Services, at least initially, to age nineteen, age nineteen is the touchstone in determining amenability. In P.H. v. State, 504 P.2d 837, 846 n. 34 (Alaska 1972), we noted a conflict between the former AS 47.10.060(d) and AS 47.10.080(b)(1). At the time of the P.H. decision, AS 47.10.060 provided "[a] minor is unamenable to treatment ... if he [probably] cannot be rehabilitated ... [before] he reaches 21 years of age." Former AS 47.10.080(b)(1) provided that the court could only order commitment until age nineteen with an additional one-year period if the department petitions the court for an extension of the period of supervision. In P.H., we held that AS 47.10.080(b)(1) was controlling over AS 47.10.060(d) because AS 47.10.080(b)(1) reflected "a 1970 legislative decision intended to reduce the age of majority in a great number of matters concerning minors ... [while] AS 47.10.060(d) ... was not similarly changed apparently through oversight."[5] Following our decision in P.H., the legislature amended both statutes in 1977. The recent amendments show that it is the legislature's intent that age twenty is the age to be used in determining the amenability issue. The former inconsistency between the two statutes has been eliminated in that AS 47.10.060(d) provides that the determinative age is twenty and AS 47.10.080(b)(1) provides that the maximum limitation of confinement of minors is twenty.
Furthermore, in our recent opinion, In re J.H.B., Jr., 578 P.2d 146, 149 (Alaska 1978), we relied upon amended AS 47.10.060(d) as the source for determining the issue of unamenability. Thus, we no longer followed our former cases[6] which used nineteen as the determinative age under the earlier statutes. The superior court did not err in using age twenty as the determinative age.

II. THE MINOR'S CONSENT
In determining the amenability of F.S., the court considered the consent of F.S., endorsed by his counsel and his guardian, to an additional one-year period of supervision past age nineteen. AS 47.10.080(b)(1) provides in pertinent part:
... the department [of health and social services] may petition for and the court may grant in a hearing... an additional one-year period of supervision past age 19 if continued supervision *611 is in the best interests of the person and the person consents to it; ...
The state contends that the lower court erred in considering this purported consent because: (1) the minor could withdraw his consent and (2) even assuming the minor's consent could not be withdrawn, the statute requires that the department petition the court and that additional commitment be in the minor's best interests before the court has jurisdiction to order the additional one-year period.
This is an issue of first impression in Alaska. The Washington Supreme Court, in In re Harbert, 85 Wash.2d 719, 538 P.2d 1212 (1975), considered a similar issue. A Washington statute[7] permits the juvenile court to extend its jurisdiction beyond the usual age of eighteen to twenty-one in certain cases when the juvenile gives his consent. At the time of the amenability hearing, the minor, age seventeen, gave written consent for such an extension. The Harbert court held:
Such consent is of no value. Because of his minority, appellant could repudiate it upon reaching majority. Furthermore, jurisdiction cannot be conferred by consent or agreement.
538 P.2d at 1216. We find the reasoning of the Harbert court persuasive as to the consent of F.S. to continued supervision by the Department of Health and Social Services. Furthermore, AS 47.10.080(b)(1) requires that the department petition for an additional one-year period of supervision and that continued supervision be in the best interests of the minor before the court may order an additional year. Thus, the minor's prospective consent is not a material factor unless the other two conditions of the statute are fulfilled.
The statute contemplates that the decision to extend the period of supervision be made after the initial dispositional hearing. To give effect to advance consent would thus be contrary to the apparent intent of the legislature. We believe that the superior court erred in the weight it gave the consent of F.S. to an additional year of supervision.

III. THE STANDARD OF PROOF
Judge Stewart stated in his memorandum decision:
The appropriate standard of proof appears to be that the state must show by clear and convincing evidence the probability that the minor is unamenable to treatment before reaching the age of 20.
The state contends that the proper standard of proof is the "preponderance of the evidence" standard. We agree.
This is also a matter of first impression. Our previous decisions have indicated, however, that the burden of persuasion on the state is not light. For instance, in P.H. v. State, 504 P.2d at 845, we stated:
The statutory framework for dealing with child offenders contemplates that non-criminal treatment is to be the rule and adult criminal disposition the exception.
Nevertheless, our review of the relevant authorities and the statutory language convinces us that the proper standard is the "preponderance of the evidence" standard. Such a standard will still insure that criminal disposition is the exception.
Cases examined as a result of our independent research are uniform in holding that the proper standard is the preponderance of evidence.[8] F.S. cites no contrary authority. The courts have given three reasons for applying this standard. First, a remand proceeding is not criminal in nature. Second, it is not adjudicatory, but dispositional. Third, the standard of proof generally in juvenile proceedings is the preponderance of competent evidence except in the adjudicative phase. Moreover, the remand *612 proceeding does not result in any determination of guilt or innocence or in any confinement or punishment. We find this reasoning persuasive.
The wording of AS 47.10.060 also indicates that the preponderance of the evidence standard is the proper standard.
(d) A minor is unamenable to treatment under this chapter if he probably cannot be rehabilitated by treatment under this chapter before he reaches 20 years of age. [emphasis added]
"Probable" means "having more evidence for than against."[9] "Preponderance of the evidence" has the same connotation.[10] Thus, the superior court imposed the wrong burden of proof upon the state.
We conclude that the superior court, in requiring the state to prove by clear and convincing evidence that said minor was unamenable to treatment, erred. Nevertheless, in the context of this case, the error was harmless.[11] The superior court found:
From this analysis I conclude not only that the state failed to prove that F.S. is unamenable to treatment before reaching the age of 20 years, but that it has been clearly shown on behalf of the minor that he is so amenable.
Thus, even under the preponderance of the evidence standard, the superior court would have concluded that the state failed to meet its burden of proof.

IV. THE EXCLUSION OF EVIDENCE THAT F.S. HAD COMMITTED PREVIOUS SEXUAL ASSAULTS
At the waiver hearing, the state sought to introduce the testimony of three witnesses[12] that F.S. had committed previous sexual assaults. The police reports and the state's offer of proof indicate that if allowed to testify, they would have testified as follows. First, Carol Weston would state that approximately one and a half years before the murder[13] she observed, as she approached the end of the alley near her house at 3:30 a.m., F.S. walking away from her four year old sister; that she asked her sister what he wanted and her sister stated that he wanted her to go down the alley; that she ran up to F.S. and asked him why but he did not reply; and that she told him to stay away from her sister. Second, V.R., who "went with" F.S. for about a year, would testify that one time F.S. invited her to his house under the pretense that F.S.'s sister, who was V.R.'s friend, was home; that when she arrived she found no one else besides F.S. present; that sometime during her visit, F.S. forcibly threw her down on a bed and attempted to rape her, but she managed to ward him off;[14] and that she first told her high school counselor about this incident just after G.G.'s death. Third, C.S., F.S.'s sister, would relate that on one occasion, when she was in her bedroom wearing a robe and underwear, F.S. came into her room and tried to remove her underwear; that she struggled and he eventually left;[15] and that in her opinion, F.S. had an unusual obsession with sex.
The state maintained that this testimony was relevant to show the minor's character and one of the requirements of AS 47.10.060(d)  the minor's history of delinquency. The superior court refused to admit the testimony because it was collateral and "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a *613 person in order to show that he acted in conformity therewith."[16]
In P.H. v. State, 504 P.2d at 843 n. 15, we spoke about the rules of evidence in a waiver hearing.
Children's Rule 3(e) provides in part:
[T]he provisions of these rules concerning ... admissibility of evidence for the adjudicative phase of child hearings shall be applicable to [a waiver] hearing.
In a context not involving a children's case, we have stated that:
The court may exclude relevant evidence if it finds that its probative value is outweighed by the risk that it will have prejudicial effect on the jury, confuse the issues, or mislead the jury... . The court must balance the probative worth against those countervailing harms.
Burgess Construction Co. v. Hancock, 514 P.2d 236, 237 (Alaska 1973) (citations omitted).[17]
While the proffered testimony was relevant to the amenability issue, we do not find that the superior court abused its discretion in excluding it because its prejudicial impact outweighed its probative value.[18] As to Ms. Weston's testimony, its probative value was minimal since she did not see anything remotely criminal. While V.R.'s statements were of some probative value, the trial court could have properly concluded that their value was diminished due to the fact that V.R. did not report the incident, assuming that it occurred,[19] for over approximately ten months and that the report was made during the period of high emotion following the discovery of G.G.'s body. Moreover, the police reports and the state's offer of proof indicate that V.R. and F.S. were "going together" at the time of the alleged incident and thus, F.S.'s behavior could be attributable to normal adolescent sexual activity. Similarly, F.S.'s one-time attempt to disrobe his sister could also be attributed to the sexual adolescent development of a sixteen-year-old male and does not evidence a pattern of sexual deviation. Further, we note that a description of these three incidents was contained in the police reports and they were referred to in the reports prepared by the various psychiatrists, all of which were admitted into evidence.[20] Thus, any testimony concerning these incidents would have been merely cumulative. The trial court has wide discretion in this area, and we find no abuse here.[21]

V. THE DENIAL OF WAIVER
The trial court denied the state's motion for waiver of juvenile jurisdiction stating that "it has been clearly shown on behalf of the minor that he is ... amenable" to treatment. The state submits that the trial court committed error in failing to waive jurisdiction. Although this is a close *614 question, we find that the trial court did abuse its discretion in denying the waiver.
In making the amenability determination, the legislature has provided in AS 47.10.060(d) that:
... the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.
We have previously stated that the trial court must make an evidentiary record and make written findings of fact, as required by Children's Rule 3(h),[22] as to each of these four factors enunciated by the legislature.[23] These findings must be supported by substantial evidence.[24] Based on these findings, the trial court, within its sound discretion, must make a decision as to the minor's amenability to treatment.[25]
Our independent review of the record shows that the matter was presented with unusual completeness[26] and that the judge gave careful consideration to the factors mentioned in AS 47.10.060(d). We hold that the trial court's findings of fact that "there is of course no doubt at all about the seriousness of the offense;" that the probable cause of F.S.'s delinquent behavior was "an adolescent adjustment reaction stemming in large measure from the rigidly authoritarian tendencies of his father in relationship to the boy;" and that the state could provide adequate facilities to treat F.S., is supported by substantial evidence.
On the other hand, we hold that the judge's finding of fact that "F.S. [was not] a seriously delinquent juvenile" is not supported by substantial evidence.[27] In our opinion, F.S. is a seriously delinquent juvenile. F.S.'s juvenile record demonstrates that F.S. has a long history of antisocial behavior and delinquent conduct.[28] Prior to *615 the offenses committed in 1977, F.S. had twice been on probation. He participated actively in probation counselling, yet he has continued to commit serious felony offenses. According to the probation report prepared for the offenses committed in August 1977, F.S. demonstrated a lack of concern for court orders and instructions from the probation officers, had a very casual attitude and virtually no remorse regarding his present or past offenses, and had made little effort for finding employment to pay restitution for property stolen. Throughout the period of time from September 1977 until the death of G.G., F.S. was continually brought before the court. Moreover, the offenses of December and January were committed while F.S. was awaiting disposition on the previous offenses. Based on our review of the entire record, we are left with a definite and firm conviction that the trial court made a mistake in finding that F.S. was not seriously delinquent.
We are now faced with the difficult problem of deciding whether the trial court abused its discretion in concluding that F.S. was amenable to treatment as a juvenile and in denying the state's motion for waiver of juvenile jurisdiction. Our own research indicates that this is a unique issue. Although many reviewing courts have affirmed a trial court's determination that a juvenile charged with murder was not amenable to the juvenile process,[29] no case was found where a reviewing court either reversed or affirmed a lower court's ruling that a sixteen- or seventeen-year-old charged with murder was amenable to juvenile treatment. Neither party cited such a case.
We are convinced, on a review of the whole record, that the trial court's conclusion that the minor was amenable to treatment was an abuse of discretion.[30] Several reasons support our reversal of the trial court's determination. First, as noted in Section II, the trial court erroneously considered the minor's consent to an additional year of supervision. In making our determination, we refuse to consider this consent. Second, as we stated above, we found that the trial court's finding of fact that the minor was not seriously delinquent was clearly erroneous. Thus, this factor weighs in favor of a conclusion that the minor is not amenable to treatment. Moreover, the present offense resulted in the loss of human life and is of a most heinous nature. Further, the minor is presently over seventeen and a half years old, leaving but a short time for treatment. What we said in P.H. v. State, 504 P.2d at 846, is appropriate here.
The peculiar facts of this case indicating very serious antisocial behavior and the inability to predicate a plan for the defendant during the short time remaining before [his] nineteenth birthday coupled with the obvious need of treatment as disclosed by the record, are sufficient to justify a waiver to adult jurisdiction. [footnote omitted]
*616 We conclude that the trial court erred in finding that F.S. was amenable to treatment and in denying the state's motion for waiver of juvenile jurisdiction.
The case is reversed and remanded for further proceedings not inconsistent with this opinion. We add one further comment. If F.S. is convicted of first degree murder, he will be sentenced as an adult. Nothing in this opinion is meant to imply that any sentence which F.S. may be given should deny him the rehabilitative treatment that he so obviously needs.
REVERSED and REMANDED.
RABINOWITZ, Justice, concurring in part, dissenting in part.
I respectfully dissent from the majority's holding that the superior court erred in its ruling that the minor was amenable to treatment as a juvenile. My review of the entire record has not left me with a definite and firm conviction that the superior court committed an abuse of discretion in reaching its conclusion that F.S. was amenable to treatment as a juvenile and in denying the state's motion for waiver of juvenile jurisdiction.
Study of the record demonstrates that the superior court, in reaching its amenability determination, carefully considered the evidence and scrupulously applied the criteria set forth in AS 47.10.060(d), as well as our interpretation of this statute found in P.H. v. State, 504 P.2d 837 (Alaska 1972).[1] Admittedly, the facts of the instant offense are horrifying. However, absent a legislative change in Alaska's juvenile code, the question of whether juvenile jurisdiction over the minor should be waived is committed to the sound discretion of the superior court.[2]
NOTES
[1] AS 47.10.060(a) provides:

(a) If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as if he were an adult.
[2] Children's Rule 3(a) provides:

(a) Where a petition alleges that a child committed an act which if committed by an adult would be a crime, and it appears to the court from the petition or upon testimony heard in connection therewith that there may be probable cause for believing that the act alleged in the petition was committed by the child and that he is not amenable to treatment, a hearing must be held for the purpose of determining if the child shall be prosecuted as if he were an adult. Such a hearing shall be designated as a waiver hearing.
[3] We grant review under Appellate Rules 23 and 24.
[4] AS 47.10.080(b)(1) provides:

(b) If the court finds that the minor is delinquent, it shall
(1) order the minor committed to the Department of Health and Social Services for a period of time not to exceed two years or in any event extend past the day the minor becomes 19, except that the department may petition for and the court may grant in a hearing (A) two-year extensions of commitment which do not extend beyond the child's 19th birthday if the extension is in the best interests of the minor and the public; and (B) an additional one-year period of supervision past age 19 if continued supervision is in the best interests of the person and the person consents to it; the department shall place the minor in the juvenile facility which the department considers appropriate and which may include a juvenile correctional school, detention home, or detention facility; the minor may be released from placement or detention and placed on probation on order of the court and may also be released by the department, in its discretion, under sec. 200 of this chapter;
.....
[5] P.H. v. State, 504 P.2d at 846 n. 34. See also Walsh, "An Analysis of the Jurisdictional Waiver Procedure in the Juvenile Courts," 5 UCLA-Alaska L.Rev. 152, 174 n. 132 (1975).
[6] See D.H. v. State, 561 P.2d 294, 298 (Alaska 1977); P.H. v. State, 504 P.2d 837, 846 n. 34 (Alaska 1972).
[7] See Chapter 170, Laws of 1975, 1st Ex.Sess.
[8] See Imel v. State, 342 N.E.2d 897, 900 (Ind. App. 1976); In re Appeal No. 646(76) From Cir. Ct., Etc., 35 Md. App. 94, 369 A.2d 150, 152 (1977); In re Miles, 269 Md. 649, 309 A.2d 289, 293 (1973); In re Lerma, 29 Or. App. 713, 564 P.2d 1100, 1101 (1977); State v. Layne, 546 S.W.2d 220, 224 (Tenn. App. 1976); In re P.B.C., 538 S.W.2d 448, 453 (Tex.Civ.App. 1976).
[9] Webster's New International Dictionary (2d ed. unabrid. 1960) at 1971.
[10] Black's Law Dictionary (4th ed. 1951) at 1344-45.
[11] See Love v. State, 457 P.2d 622, 631 (Alaska 1969).
[12] Two witnesses, C.S. and V.R., are juvenile females.
[13] The police report states that this incident took place a year and a half before the murder. The district attorney in his offer of proof stated that the incident occurred in the spring of 1977, which was approximately ten months before the murder.
[14] Apparently, this incident took place sometime during the spring or summer of 1977.
[15] The district attorney believed that this action occurred in the spring or summer of 1977.
[16] See Federal Rule of Evidence 404(b); Proposed Alaska Rule of Evidence 404(b).
[17] See Federal Rule of Evidence 403; Proposed Alaska Rule of Evidence 403.
[18] The standard of review for determining whether a trial court erred in excluding relevant evidence because of its prejudicial impact is the abuse of discretion standard. See Smith v. Spina, 477 F.2d 1140, 1146 (3rd Cir.1973); United States v. Ravich, 421 F.2d 1196, 1204-05 (2d Cir.), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); Bowers v. Garfield, 382 F. Supp. 503, 509 (E.D.Pa.), aff'd, 503 F.2d 1398 (3rd Cir.1974).
[19] F.S.'s counsel stated that if V.R. testified, F.S. would deny that he attempted to rape her.
[20] The police report was contained in the packet of information sent to various institutions by the state, which was admitted into evidence.
[21] The state's reliance on D.H. v. State, 561 P.2d 294, 297 (Alaska 1977), is misplaced. There, we held that the trial court did not err in allowing a police officer to testify as to D.H.'s admission that he had planned additional crimes in the future. The present situation is not analogous. Moreover, even assuming these situations were analogous, because we ruled in one case that a trial court did not abuse its discretion in admitting evidence, it does not follow that in another similar case, a trial court would have abused its discretion in excluding similar evidence. Given the deference we accord to a trial court's evidentiary rulings, we cannot say that the judge here committed error in excluding the proffered testimony.
[22] Children's Rule 3(h) specifies:

(h) The order closing the case must be accompanied by written findings of fact clearly demonstrating that:
(1) The court made full inquiry into the allegations of the petition,
(2) The question of waiver of children's proceedings and of closing the children's case were given careful consideration by the court, and
(3) All statutory conditions for waiver of child proceedings and closing the case were established.
[23] See In re J.H.B., Jr., 578 P.2d 146, 149 (Alaska 1978); P.H. v. State, 504 P.2d 837, 845-46 (Alaska 1972).
[24] See D.H. v. State, 561 P.2d at 298.
[25] See P.H. v. State, 504 P.2d at 845, holding that "the amenability decision rests in the sound discretion of the children's court judge."
[26] The trial court relied upon the large amount of psychiatric evidence. Dr. C. Glenn Clement's psychiatric evaluation states: "I would see him [F.S.] as quite amenable to psychotherapy and to rehabilitation." Theodore R. Sterling, a clinical psychologist, saw F.S. "as amenable to therapy of an intense nature." Dr. Livingston of the Alaska Psychiatric Institute "felt that the minor can potentially be rehabilitated by treatment under AS 47.10 before he reaches the age of 20 years." Dr. E.J. Johnson concluded that "[i]f an appropriate treatment program can be found which will accept the minor then I would have to say that he is potentially treatable before he reaches his twentieth birthday." On the other hand, Dr. Irvin A. Rothrock of the Fairbanks Psychiatric and Psychological Clinic concluded that "his treatment would extend over a period of at least three to five years and that the probability of successful treatment would not be high." The psychological evaluation by C. Friar, a psychologist, stated that "one cannot predict at this point [the] length of treatment needed nor [the] possible effectiveness of treatment." Additionally, the trial court received a large volume of conflicting evidence concerning the availability of treatment facilities for F.S.
[27] In Interior Paint Co. v. Rodgers, 522 P.2d 164, 170 (Alaska 1974) (footnotes omitted), we stated:

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion... ." [I]t is not the function of the court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.
[28] F.S.'s juvenile record is:

November 1973 ___ Larceny from a Vessel,
 AS 11.20.150
July 1975 _______ Receiving and Concealing
 Stolen Property,
 AS 11.20.350
July 1977 _______ Burglary Not in a Dwelling,
 AS 11.20.100
July 1977 _______ Burglary Not in a Dwelling,
 AS 11.20.100
August 1977 _____ Burglary Not in a Dwelling,
 AS 11.20.100
August 1977 _____ Burglary Not in a Dwelling,
 AS 11.20.100
September 1977 __ Burglary in a Dwelling,
 AS 11.20.080
December 1977 ___ Burglary in a Dwelling,
 AS 11.20.080
December 1977 ___ Malicious Destruction of
 Property, AS 11.20.515;
 Petty Larceny, AS 11.20.140

[29] See In re Maricopa County, Juvenile Action No. J-72804, 18 Ariz. App. 560, 504 P.2d 501, 503-04 (1972); Stanley v. State, 248 Ark. 787, 454 S.W.2d 72, 76 (1970); People v. Curry, 31 Ill. App.3d 1027, 335 N.E.2d 515, 517 (1975); State v. Green, 218 Kan. 438, 544 P.2d 356, 363 (1975); State v. Doyal, 59 N.M. 454, 286 P.2d 306, 312 (1955); Berryhill v. State, 568 P.2d 1306, 1310 (Okl.Cr. 1977); Bias v. State, 561 P.2d 523, 528 (Okl.Cr. 1977); In re Lerma, 29 Or. App. 713, 564 P.2d 1100 (1977); In re Burtts, 12 Wash. App. 564, 530 P.2d 709, 717 (1975).
[30] A trial court abuses its discretion "only if we were left with the definite and firm conviction on the whole record that the judge had made a mistake... ." Alaska Placer Co. v. Lee, 502 P.2d 128, 132 (Alaska 1972) (footnote omitted), quoting, Gravel v. Alaskan Village, Inc., 423 P.2d 273, 277 (Alaska 1967).
[1] See also Matter of J.H.B., 578 P.2d 146 (Alaska 1978); D.H. v. State, 561 P.2d 294 (Alaska 1977).
[2] In all other respects, I concur in the court's various holdings.