v.

**STATE of Alaska, Appellee.**

**No. A–328.**

Court of Appeals of Alaska.

June 21, 1985.

Alex Swiderski and Cynthia Strout, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

Gail T. Voigtlander, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and CRANSTON, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

In this case, C.G.C., a minor, appeals an order of the superior court finding him unamenable to treatment as a minor and waiving children's court jurisdiction. We affirm the superior court's order.

On July 31, 1983, C.G.C., then fifteen and one-half years old, spent the day with a group of friends at the airstrip in the village of Pilot Point. He drank a substantial amount of alcoholic beverages and consumed cocaine and marijuana. At approxi-

---

* Cranston, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

mately 5 or 6 p.m., C.G.C. became involved in an argument with a companion, Loren Abyo, over Abyo's girlfriend, Sophie Larson, who was also present. After leaving for a short time, C.G.C. returned, armed with a .357 caliber revolver, and shot Larson twice, inflicting serious injuries. Later, still armed with the same gun, C.G.C. encountered another Pilot Point resident, Gust Griechen. C.G.C. aimed the revolver at Griechen's head and fired. The bullet narrowly missed Griechen. At some point during the same evening, C.G.C. also obtained possession of a 10-gauge shotgun. With the shotgun, he shot and killed his mother, his nine-year-old brother and another Pilot Point resident, James Achayok. In addition, C.G.C. entered the home of Bud Reina and fired the shotgun at him, causing serious injury. Reina called for assistance on his C.B. radio. When Lance Blackwood, the Pilot Point school teacher, responded to Reina's call, C.G.C. shot Blackwood, hitting him in the back with a single pellet. After the shootings, C.G.C. went to a cabin at his mother's fishing camp, outside Pilot Point, where Alaska State Troopers arrested him later that night.

The state subsequently petitioned the superior court to waive children's court jurisdiction over C.G.C. A hearing was conducted before Superior Court Judge Seaborn J. Buckalew, and extensive testimony was presented concerning C.G.C. and the incident that led to his arrest. Upon completion of the hearing, Judge Buckalew entered comprehensive written findings, concluding that C.G.C. was not amenable to treatment as a minor. Accordingly, Judge Buckalew ordered children's court jurisdiction waived, permitting C.G.C. to be charged and tried as an adult. The superior court's order was stayed by this court, pending appeal.

On appeal, C.G.C.'s primary argument is that the superior court abused its discretion in concluding that he was not amenable to treatment as a minor.[1] The rules governing waiver of children's court jurisdiction are set out in AS 47.10.060, which states, in relevant part:

(a) If the court finds at a hearing on a petition [for waiver] that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as if he were an adult.

.    .    . .    .    .

(d) A minor is unamenable to treatment under this chapter if he probably cannot be rehabilitated by treatment under this chapter before he reaches twenty years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and facilities available to the division of youth and adult authority for treating the minor.

Here, C.G.C. maintains that the waiver of children's court jurisdiction was erroneous in light of his age (15½ years), his lack of prior arrests or adjudications for delinquency, and his favorable prognosis for treatment.

---

1. C.G.C. raises a number os subsidiary issues, which can be disposed of summarily. He maintains, initially, that Judge Buckalew misallocated the burden of proof in determining the waiver issue. Our review of the record, however, establishes that, in reaching his ultimate conclusion on waiver, the judge clearly decided that the state had proved, by a preponderance of the evidence, that C.G.C. was unamenable to treatment as a minor. C.G.C. next argues that a number of the superior court's findings are unsupported by evidence. We conclude that the findings are supported by substantial evidence in all significant respects. Finally, C.G.C. contends that the court erred in using preponderance of the evidence rather than clear and convicing evidence as the standard of proof applicable to the waiver determination. This issue was expressly decided by the Alaska Supreme Court in *In re F.S.*, 586 P.2d 607, 611–12 (Alaska 1978), which adopted preponderance of the evidence as the applicable standard. The supreme court's decision in *F.S.* is binding on this court.

In considering C.G.C.'s argument, we note initially that the superior court retains considerable discretion to assess, on a case-by-case basis, the relative significance of the four factors listed in AS 47.10.060(d):

In making the amenability determination, the legislature has provided in AS 47.10.060(d) that:

the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

All four factors need not be resolved against the child to justify waiver. Nor is there value in requiring the children's court to make an arithmetic calculation as to the weight to be given each factor. There must, however, be a thorough examination of the child, his background and alternative strategies of rehabilitation short of adult criminal treatment. Lacking such an examination, the children's court has no evidentiary basis for the decision.

*P.H. v. State*, 504 P.2d 837, 845–46 (Alaska 1972). *See also In re F.S.*, 586 P.2d 607, 615 (Alaska 1978).

The extensive evidentiary hearings conducted in the present case, coupled with the superior court's careful and comprehensive review of the evidence in its written findings and conclusions, unquestionably complied with the requirement of a thorough examination of C.G.C., his background, and available alternatives for his rehabilitation. The principal question to be resolved, therefore, is whether, based on all the evidence presented, the superior court's finding of unamenability is clearly erroneous.

Although generally favorable to C.G.C., the psychiatric evidence was far from conclusive of his amenability to treatment by age twenty. Three psychiatrists and a psychologist testified below, and all agreed that C.G.C. had a substantial problem with abuse of alcohol and other drugs, that this problem contributed significantly to his conduct in this case, and that the problem would require extended treatment before it could be resolved. Options for addressing C.G.C.'s substance abuse problem within the context of existing facilities for minors appear limited, particularly because the seriousness of C.G.C.'s conduct will inevitably require him to be treated in a secured custodial setting, at least in the foreseeable future.

Expert witnesses at the hearing below also concurred in the view that C.G.C. suffered from emotional problems that would require psychotherapy. However, while the psychiatrists and psychologist agreed that the prognosis for treatment of C.G.C.'s emotional problems was generally favorable, there was no consensus as to whether those problems would successfully be addressed by the time he turned twenty years of age. Moreover, there was ample room for skepticism by the court as to the validity of the prognosis for C.G.C.'s treatment, since the optimistic views expressed during the evidentiary hearings below depended heavily upon recent evaluations noting unusual improvement in C.G.C.'s attitude and relationships and in his performance on various psychological tests. The superior court might well have found the theories explaining those recent changes to be less than convincing.

Nor was the superior court bound to accept the psychiatric testimony explaining C.G.C.'s violent behavior. *See J.R. v. State*, 616 P.2d 865, 867 (Alaska 1980). The expert testimony attributed the shooting spree to C.G.C.'s accumulated anger and frustration over his deteriorating family situation and worsening relationship with his mother. The testimony indicated that C.G.C.'s condition was exacerbated by his intoxication and drug use. In concluding that C.G.C. was unamenable to rehabilitation, however, Judge Buckalew expressly found that the combination of anger, frustration and intoxication did not adequately explain C.G.C.'s behavior.

We believe the circumstances surrounding C.G.C.'s conduct provide substantial evidence to support Judge Buckalew's conclu-

sion. C.G.C.'s violent conduct occurred in response to seemingly minor provocation. Witnesses who observed C.G.C. on July 31 testified that he appeared to be in control of his faculties and did not seem severely intoxicated. C.G.C. shot at a total of seven different people over a period of several hours; his victims were at different locations in Pilot Point. The duration of C.G.C.'s assault and the manner in which it was accomplished appear incompatible with an outburst of anger. Similarly, witnesses who observed C.G.C. indicated that he appeared to be acting deliberately. C.G.C.'s own statements shortly after his arrest support these observations. Finally, there is strong circumstantial evidence that C.G.C. sexually molested his mother either immediately before or after he killed her.

We find it difficult to imagine a more frightening or egregious episode of unprovoked violence than that established by the state's proof in this case. It was not improper for the superior court to place substantial reliance on the extreme violence exhibited by C.G.C. in committing the offenses that led to his arrest. *See Dolchok v. State*, 519 P.2d 457, 459–61 (Alaska 1974) (trial court did not err in relying on circumstances of the offense to reject undisputed psychological evidence concerning defendant's insanity).

 In *P.H. v. State*, 504 P.2d 837, 846 (Alaska 1972) (footnote omitted), the supreme court stated:

> The peculiar facts of this case indicating very serious antisocial behavior and the inability to predicate a plan for the defendant during the short time remaining before her nineteenth birthday coupled with the obvious need of treatment as disclosed by the record, are sufficient to justify a waiver to adult jurisdiction.

Although C.G.C.'s age and his lack of prior juvenile adjudications make the issue of his unamenability to treatment as a minor a particularly close one, in the final analysis we believe the language used by the supreme court in *P.H.* is apt when applied to the context of the present case. Having independently reviewed the record of proceedings below, we conclude that the superior court did not abuse its discretion in finding that C.G.C. was not amenable to treatment as a minor.[2]

The superior court's order waiving children's court jurisdiction and permitting C.G.C. to be charged and tried as an adult is therefore AFFIRMED.

COATS, J., not participating.

---

2. On February 8, 1985, upon C.G.C.'s motion, we ordered a temporary remand to the superior court to permit Judge Buckalew to hear additional testimony concerning C.G.C.'s amenability to rehabilitation. On March 18, 1985, following an evidentiary hearing, Judge Buckalew entered a written order containing supplemental findings of fact and conclusions of law. In the order, the judge declined to alter his initial decision. We have carefully reviewed the decision on remand and conclude that Judge Buckalew did not err in reaffirming his initial decision to waive children's court jurisdiction.