P.K.M., A Minor, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2793.

Court of Appeals of Alaska.

Oct. 13, 1989.

Richard Keck, Asst. Public Defender, Fairbanks, and John Salemi, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

P.K.M., a minor, appeals an order entered by Superior Court Judge Jay Hodges waiving juvenile court jurisdiction and directing that P.K.M. be tried as an adult for burglary, robbery, and murder. P.K.M. argues that the evidence presented at his waiver hearing does not support the superior court's ruling.

On April 1, 1988, P.K.M. and another minor, R.H., burglarized a chiropractor's office and stole a handgun. They later decided to use the gun to rob a taxicab driver. During the robbery, R.H. shot and killed the driver, Dale Baurick. *See R.H. v. State*, 777 P.2d 204 (Alaska App.1989).

At the time of the offense, P.K.M. was seventeen years old, four months away from his eighteenth birthday. The state petitioned for waiver of children's court jurisdiction, alleging that P.K.M. was not amenable to treatment as a minor. *See* AS 47.10.060. A bifurcated hearing on the petition was conducted before Superior Court Judge Jay Hodges. The first phase of the hearing dealt with the circumstances of the offense. P.K.M. conceded that the evidence established probable cause to support the charges against him, as required under AS 47.10.060(a).

The second phase of the waiver hearing focused on P.K.M.'s amenability to treatment under A 47.10.060(d):

A minor is unamenable to treatment under this chapter if the minor probably cannot be rehabilitated by treatment ... before reaching 20 years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.

The court heard extensive evidence concerning P.K.M.'s background, his psychological makeup, and the juvenile treatment facilities that would be available to him in the two years remaining before his twentieth birthday. The evidence included a comprehensive juvenile intake investigation, as well as reports and testimony from three psychologists and two psychiatrists. At the conclusion of the hearing, Judge Hodges decided that P.K.M. was not amenable to treatment as a minor and ordered waiver of children's court jurisdiction.

P.K.M. argues on appeal that the evidence does not support the superior court's decision to waive jurisdiction. In advancing this argument, P.K.M. relies on portions of the record that are favorable to him. The trial court, however, was not required to view the evidence in the light most favorable to P.K.M., but was entitled to consider the totality of the evidence and to draw its own conclusions therefrom. The relevant question on appeal is whether the conclusions that the trial court reached are supported by substantial evidence. *In re F.S.*, 586 P.2d 607, 614 (Alaska 1978), *reversed on other grounds, State v. F.L.A.*, 608 P.2d 12 (Alaska 1980).

In determining whether to waive juvenile jurisdiction, the superior court is required to consider four factors: the seriousness of the offense, the minor's past history of delinquent behavior, the probable cause of the delinquent behavior, and

the facilities available for the minor's treatment. AS 47.10.060(d); *P.H. v. State*, 504 P.2d 837, 845 (Alaska 1972). The state bears the burden of establishing unamenability by a preponderance of the evidence. *In re F.S.*, 586 P.2d at 611–12; *W.M.F. v. State*, 723 P.2d 1298, 1303 (Alaska App. 1986). However, all four of the statutory factors need not be decided against the minor. *In re P.H.*, 504 P.2d at 845. The ultimate issue is whether the minor is probably amenable to rehabilitation by age twenty.

█ In the present case, Judge Hodges recognized that, despite being almost eighteen years of age, P.K.M. had only a minor history of delinquent behavior. The judge concluded that P.K.M.'s prior delinquent behavior did not in itself indicate a need for waiver.

With respect to the seriousness of the offense, however, Judge Hodges found that P.K.M. had participated in delinquent behavior that involved the most serious of crimes, murder. Although P.K.M. insists on appeal that he played no active role in Baurick's murder, this argument is contrary to the trial court's interpretation of the evidence. Judge Hodges' findings make it plain that, in his view, P.K.M.'s role in the murder was neither minor nor passive:

> Subsequent to the burglary, the two boys had further discussions concerning what to do with [the stolen handgun]— whether they would sell it for money or use it to perpetrate a criminal offense. There was discussion initiated by [P.K.M.] to rob a 7–Eleven convenience store. [R.H.] initiated the discussion concerning the robbery of a cab. Ultimately the two boys jointly participated in the robbery of a cab.
>
> The court concludes by a preponderance of the evidence that prior to getting into the cab there was discussion concerning not only the robbery but also a discussion concerning the killing itself. Maybe the boys were not totally serious about the killing at the time they got into the cab, but there was discussion. . Certainly both boys, [P.K.M.] in particular,

would have been aware that there was a substantial probability of serious physical injury or even death to the cab driver. [P.K.M.] was a willing participant in the crime itself. The facts leading up to the crime, the facts afterwards in participating in the gains, disposing of the evidence, trading the gun for cocaine, all indicate by a preponderance of the evidence that he was in fact involved with respect to the killing itself.

Based on the evidence concerning the circumstances surrounding the offense, Judge Hodges concluded that "[t]he act itself can be characterized as an act of extreme unprovoked violence on the part of [P.K.M.].... Although [P.K.M.] did not use the weapon, he was there and certainly is as culpable as [R.H.] on the facts before the court." We find substantial evidence in the record to support the superior court's findings with respect to the seriousness of P.K.M.'s delinquent behavior.

As to the probable cause of the delinquent behavior, Judge Hodges concluded that P.K.M. did not suffer from any major mental disorder. However, the judge found that P.K.M. had a long-standing problem with alcoholism, and that this problem played a significant role in the offense:

> As was testified to by the experts, the effect of alcohol abuse is far greater on a minor than on an adult. It has prohibited him and prevented him from forming the normal moral values, the normal job skills and the other skills that someone who goes from a teenager into an adult ... needs to have in order to function correctly in society. Although the testimony from all the psychiatrists and psychologists who have testified is that his alcohol disorder is treatable, all feel it would take a substantial period of time.

Based on the expert testimony, Judge Hodges found that, although P.K.M.'s problem with alcohol was treatable, a close issue was presented as to whether successful treatment could be provided before P.K.M.'s twentieth birthday. On appeal, P.K.M. contends that the expert testimony does not support the trial court's skepti-

cism as to the length of time necessary to address P.K.M.'s problem.

The experts who presented their views to the court, however, were divided in their assessment of P.K.M.'s amenability to treatment before his twentieth birthday. The five experts generally concurred that P.K.M. showed no signs of major mental illness, but suffered from an identity or conduct disorder that manifested itself in immaturity, impulsiveness, and a lack of clear-cut goals. The experts also concurred that P.K.M. had a significant problem with alcohol and substance abuse. While all agreed that P.K.M. was capable of being treated for alcoholism, they were less than unanimous in estimating his chances for success by age twenty. Doctors Parker and Kennedy were relatively optimistic, concluding that P.K.M.'s chances for rehabilitation were favorable. Somewhat less assured was Dr. Rose, who, although expressing the view that P.K.M. could successfully be treated, acknowledged that necessary treatment within a two-year period "would be very difficult, even with the best of treatment programs available." Doctors Harper and McCarthy expressed more negative views. Dr. Harper characterized P.K.M.'s chances for successful rehabilitation as a minor as being "somewhere between guarded and fair." In Dr. McCarthy's opinion, P.K.M. probably could not be rehabilitated before age twenty. All of the experts acknowledged that the task of predicting future success in treatment was, at best, an extremely difficult and uncertain one.

In summarizing his conclusions concerning the probable causes of P.K.M.'s delinquent behavior, Judge Hodges found it "difficult to assess whether [P.K.M.'s alcoholism] mitigates for or against waiver. The fact that [P.K.M.] has no psychiatric or psychological disorder ... would mitigate against waiver. A substantial alcohol problem and the relatively small amount of time between now and the time he turns twenty would mitigate for the waiver." Given the divergent views expressed by the experts concerning the scope of P.K.M.'s problem with alcoholism, and further given the uncertainty inherent in psychological predictions of future conduct, we conclude that Judge Hodges was not clearly erroneous in concluding that P.K.M.'s alcoholism tended to indicate that waiver was appropriate.

Judge Hodges' consideration of the first three statutory factors left the issue of P.K.M.'s waiver extremely close, rendering the fourth factor—the availability of treatment—the decisive one. The psychological and psychiatric evidence presented below clearly established that successful treatment of P.K.M.'s alcoholism would require relatively long-term placement in a secure residential facility offering specialized treatment for alcoholism and substance abuse. The evidence also indicated that two juvenile facilities would be available in Alaska to address P.K.M.'s needs: the McLaughlin Youth Center's Closed Treatment Unit and the Fairbanks Youth Facility. It appeared most likely that P.K.M. would be placed in McLaughlin's Closed Treatment Unit. Although the experts agreed that P.K.M. would receive treatment for alcoholism at either facility, they differed in evaluating the adequacy of the treatment to satisfy P.K.M.'s needs.

Doctors McCarthy and Harper believed that neither McLaughlin's Closed Treatment Unit nor the Fairbanks Youth Facility offered treatment that was particularly well suited to P.K.M. Dr. Rose thought that P.K.M. could successfully be treated in the Closed Treatment Unit, whereas Dr. Parker believed that the Fairbanks Youth Facility would be more suitable. Dr. Kennedy, although personally unfamiliar with either facility, concluded that an alcohol treatment program being developed at McLaughlin appeared "on paper" to be suitable.

In addition to this evidence, however, the state presented several witnesses who were directly involved with the McLaughlin Youth Center and the Fairbanks Youth Facility. These witnesses made it clear that regardless of what their programs appeared to be like on paper, neither facility actually offered long-term treatment for

alcoholism; the witnesses expressed negative views concerning P.K.M.'s prospects for successful treatment.

After considering all of the evidence, Judge Hodges found it unlikely that the available facilities would provide P.K.M. with the type of specialized residential alcoholism treatment necessary to rehabilitate him by his twentieth birthday:

> According to the testimony, the only suitable facility that the state has available for treatment is the McLaughlin Youth Center. It is unlikely that [P.K.M.] would be classified to the Fairbanks detention center because of the nature of the offense. If classified to McLaughlin it would be in the closed treatment unit because of the nature of the offense. That unit according to the testimony which the court received, has a specific therapeutic plan for sexual offenders. It does provide alcohol treatment but it cannot be characterized as a secure residential alcohol treatment facility. Although alcohol treatment is available, it is not the type of alcohol treatment that is necessary as has been testified by Dr. Kennedy to rehabilitate the boy by age twenty. It would be necessary to place him in a facility that is specifically designed and secure for the treatment of alcohol and other substance abuse.

Based on this finding, Judge Hodges went on to conclude that P.K.M. was not amenable to rehabilitation by his twentieth birthday:

> Although the case is very close, ... the court feels in light of the serious nature of this offense, in light of his involvement in that crime, in light of lack of a specific facility to treat his problem, the court finds that he cannot be rehabilitated by his twentieth birthday and that he should be waived to adult status.

While P.K.M. challenges the superior court's findings concerning the adequacy of available treatment, he once again emphasizes only those portions of the record that are favorable to him. The superior court's decision concerning the adequacy of available treatment facilities was based on substantial evidence and was therefore not clearly erroneous.

P.K.M. additionally contends that the superior court erred in limiting its consideration to treatment facilities that are available in the state of Alaska. P.K.M. maintains that other treatment facilities outside the state, which are better suited to his needs, should have been considered by the court in determining whether he could be rehabilitated by his twentieth birthday.

Most of the information in the record concerning out-of-state treatment facilities, however, was first presented after the court had already entered its waiver order—when P.K.M. moved to defer the waiver. In entering its original waiver order, the court was not remiss in failing to consider evidence that had not yet been presented.

■ In any event, we conclude that in-depth consideration of out-of-state facilities was not required. In evaluating a given treatment alternative for purposes of determining the likelihood that a minor will be rehabilitated by age twenty, the court must take into account the realistic chances of the minor's placement in that program. In the present case the evidence presented below established that, given the nature of his offense, P.K.M. would in all likelihood be placed in the closed treatment unit at the McLaughlin Youth Center if adjudicated a delinquent. The evidence further established that, under current law and under current Department of Health and Social Services policy, once P.K.M. was adjudicated a delinquent and placed in state custody, the state would be precluded from placing him in an out-of-state treatment facility.

Because P.K.M.'s chances of being placed in an out-of-state treatment facility were negligible, the superior court did not err in restricting its consideration to the adequacy of the treatment facilities available within Alaska.

Having considered the totality of the appellate record, we conclude that the superior court did not abuse its discretion in ordering that children's court jurisdiction over P.K.M. be waived.[1]

The waiver order entered below is AFFIRMED.

1. P.K.M. has separately argued that the court erred in declining to allow a private third party custodian to transport him to the Camelback Hospital in Phoenix for evaluation and treatment. While the court indicated its willingness to allow P.K.M. to be evaluated and given a thirty-day period of intensive treatment at the Phoenix Camelback Hospital, it indicated that his transportation to Arizona would be permitted only if arrangements could be made to keep P.K.M. in state custody until turned over to hospital officials. When the state was unwilling to provide P.K.M. with transportation and P.K.M. was unable to find an off-duty state employee to accompany him to Arizona, the court declined to release him to a private third party custodian for transportation to Phoenix.

Judge Hodges' decision was based on the seriousness of P.K.M.'s offense and the risk that P.K.M. might flee.

Although P.K.M. alleges that the court abused its discretion in refusing to order his release to a private third party custodian, we find no abuse of discretion. The concerns expressed by Judge Hodges were valid ones. While P.K.M. alleges on appeal that the prosecution engaged in misconduct and acted vindictively in deliberately thwarting his attempts to find an off-duty state employee who would be willing to transport him to Arizona, this allegation raises factual issues that were not raised below and that were neither considered nor ruled on by the superior court. On the record currently before us, we find no error.