608 P.2d 12 (1980)
STATE of Alaska, Petitioner,
v.
F.L.A., A Minor Under the Age of Eighteen Years, Respondent.
No. 4333.
Supreme Court of Alaska.
March 14, 1980.
Mary Ann Henry, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for petitioner.
*13 Joseph W. Evans, Birch, Horton, Bittner & Monroe, Anchorage, for respondent.
Before RABINOWITZ, C.J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

OPINION
BOOCHEVER, Justice.
The State of Alaska filed a petition for review of an order of the superior court denying the state's motion for waiver of juvenile jurisdiction.[1] By order of August 7, 1979, we granted the petition, affirmed the superior court's order and indicated that an opinion would follow.
The primary issue involved is whether the court may consider as binding a minor's consent to an extra year of treatment beyond the age of nineteen in determining whether to waive juvenile jurisdiction.[2] Under the circumstances here involved, we have concluded that the minor may give a binding consent to such additional year of treatment.

I. FACTS
F.L.A. was charged with first-degree murder as a result of the contract slaying of Colonel Robert Cassell in Anchorage, Alaska. Testimony indicated that Daniel Cassell, the son of the victim, offered another minor and F.L.A. money, a car, and a trip to New York in exchange for their killing the Colonel. The Colonel was bludgeoned to death by F.L.A. on August 15, 1978. F.L.A. was sixteen years and nine months old at the time.[3] He had no prior juvenile adjudications.
After an extensive waiver hearing, Judge Ripley issued an order denying waiver. The district attorney obtained a stay of further proceedings pending the filing of a petition for review to this court. Before the filing of the petition, we published the opinion In re F.S., 586 P.2d 607 (Alaska 1978). Based on that decision, the state filed a motion for reconsideration. The superior court held a further hearing and eventually entered an order denying the motion to reconsider.[4]
The legislature has set forth the considerations for determining amenability and treatment as a juvenile in AS 47.10.060(d) as follows:
[T]he court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the division of youth and adult authority for treating the minor.
Here there is no dispute as to the seriousness of the crime and the absence of prior delinquency on the part of the minor. While there was some variation in expert testimony as to the probable cause of the minor's delinquent behavior, it appears generally that he had an immature outlook on life. There was ample evidentiary support for the court's finding that the McLaughlin Youth Center is an adequate facility for treating F.L.A. All of the doctors testifying agreed that F.L.A. was treatable, and there was substantial evidence indicating *14 that he could be adequately treated within three years of the time of his incarceration. Of prime importance in Judge Ripley's decision was the necessity of having three years available for treatment.
F.L.A. was placed in the detention unit at the McLaughlin Youth Center in late August 1978 where he has remained. In late September, he began meeting with a youth counsellor, Rick Calcote, twice or three times weekly under supervision of Dr. Patricia Patrick, a psychiatrist. Dr. Patrick began weekly psychotherapy sessions with the child and his family commencing on November 29, 1978.
Treatment had thus commenced shortly before F.L.A.'s seventeenth birthday on November 1, 1978, and three years of treatment were feasible if the court could be reasonably assured that F.L.A. would be subject to the supervision of juvenile authorities until his twentieth birthday.
AS 47.10.080(b)(1) provides in part:
[T]he department [of health and social services] may petition for and the court may grant in a hearing . .. an additional one-year period of supervision past age 19 if continued supervision is in the best interests of the person and the person consents to it; ... .
The trial court based its decision on the binding effect of F.L.A.'s consent to treatment until age twenty.[5]
The judge found conflict between the portions of our decision in F.S. wherein we held that in accordance with AS 47.10.060(d),[6] age twenty is the proper age for determining whether a minor is amenable to treatment,[7] and our holding that a minor could repudiate a consent to such additional treatment.[8] We therefore find it necessary to re-examine our decision in F.S.

II. THE F.S. DECISION
As indicated above, we concluded in F.S. that age twenty was the proper age for determining whether a minor is amenable to treatment. Yet we also concluded that a minor's advance consent to continued supervision beyond the age of nineteen could be repudiated. Our reasoning was based upon Alaska's unique statutory scheme for allowing treatment beyond the juvenile's nineteenth birthday.
In order for the state to retain supervision past nineteen years of age, three requirements must be met: (1) the Department of Health and Social Services must petition the court, (2) the court must grant the additional one-year period of supervision, and (3) the person must consent.[9]
In F.S., we held that a minor could not give a binding consent at the time of a waiver hearing. Consent could only be granted when the person reached majority at age eighteen. Thus, in determining whether to allow a child to be tried as a juvenile on the basis that the child could be rehabilitated by age twenty, the judge was required to consider the possibility that consent could be repudiated at majority.
*15 F.S. was premised on a minor's incompetency to enter into binding agreements of various types. We also concluded that since the statute contemplated that the decision to extend the period of supervision be made after the initial disposition hearing, it would be contrary to the legislature's apparent intent to give effect to an advance consent.
We now believe that the portion of the opinion in F.S. that held that a minor in a waiver hearing could not give a binding advance consent to treatment beyond age nineteen was mistaken. First, in order to give effect to the legislature's intent that a court may consider treatment until age twenty in determining waiver of juvenile jurisdiction, it is necessary that the judge be able to evaluate at the time of the waiver hearing whether the juvenile will in fact be available for treatment. It is not possible for the judge to know this unless the child can give binding consent at the time of the hearing. A judge may assume that the other two contingencies for the additional period of treatment, the petition of the Department and the consent of the court, will be forthcoming if the child still requires treatment at age nineteen. The contingency of the juvenile's consent, however, becomes a "wild card" incapable of rational evaluation if such consent may be repudiated at majority regardless of whether additional treatment is required. We do not believe that the legislature could have intended to require that the judge's discretion be based on such an unpredictable factor. While it is true, as indicated in F.S., that the statute contemplates that the determination of the additional period of treatment be made after the initial hearing, such an intent does not mandate that an advance consent to treatment given by the minor may not be regarded as binding.
Second, we now find that it was incorrect to conclude that a minor may not under any circumstances give a binding consent in advance to an additional period of treatment. We based this portion of F.S. on the Washington Supreme Court's decision in In re Harbert, 85 Wash.2d 719, 538 P.2d 1212 (1975). In that case, a minor, aged seventeen, gave written consent to extend the jurisdiction from the time he reached the age of eighteen until twenty-one. We correctly quoted from Harbert as follows:
Such consent is of no value. Because of his minority, appellant could repudiate it upon reaching majority. Furthermore, jurisdiction cannot be conferred by consent or agreement.[10]
The statement in Harbert, however, pertaining to the repudiation of consent is merely dicta. The Washington statutes in effect at the time Harbert's offense was committed had previously been construed as conferring juvenile jurisdiction only until the age of eighteen. In re Carson, 84 Wash.2d 969, 530 P.2d 331 (1975). Although a footnote in Harbert refers to a 1975 amendment extending juvenile court jurisdiction to age twenty-one in certain cases,[11] the amendment apparently did not control Harbert's adjudication, as it became effective while Harbert's case was on appeal. Moreover, the amendment did not require a minor's consent in any event.[12] Thus, the narrow holding of Harbert is that a juvenile's consent cannot confer jurisdiction on the court.
This brings us back to the major issue confronting us  whether a minor's consent to continuing jurisdiction for treatment between the time when he reaches the age of nineteen and his twentieth birthday is binding.

III. REPUDIATION OF CONSENT BY A MINOR
Since no other state has a provision conditioning additional years of supervision on the delinquent's consent, there are no cases concerning the binding effect of a juvenile's consent to future treatment.
*16 There has been, however, extensive discussion of juvenile consent and waiver in other contexts. There exists a distinction between the validity of a juvenile waiver or consent in a civil context and in a criminal context.[13] In civil matters, a minor is legally incompetent in a wider variety of situations.[14] It has been argued that it would be anomalous to find a minor incompetent in simple civil matters, yet to give effect to a minor's waiver of constitutional rights.[15] The argument, however, has not received serious consideration.[16]
The courts have held almost without exception that the condition of infancy, by itself, is not sufficient to invalidate an otherwise competent waiver of constitutional rights.[17]
The age of a minor may have a bearing on his understanding of his constitutional rights when explained to him, but it does not confer upon the minor the right, ipso facto, to disaffirm a waiver merely by asserting his non-age at the trial.[18]
Although a minor is generally incompetent in civil matters, he is nonetheless generally competent to waive constitutional rights in criminal matters.
Even in civil matters, the trend seems to be toward expanding the juvenile right to consent. In Planned Parenthood of Missouri v. Danforth, 428 U.S. 52, 72-75, 96 S.Ct. 2831, 2842-44, 49 L.Ed.2d 788, 806-08 (1976), the United States Supreme Court held that a minor, without parental consent, may give a valid consent to an abortion. See also Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). This has led one commentator to advocate "abolishing parental consent as a condition to the medical treatment of `mature minors'... ."[19] Moreover, in R.L.R. v. State, 487 P.2d at 34, we noted that minors are competent in certain civil areas: they may hold property, nominate a guardian, consent to an adoption, and be held liable civilly for torts.[20] Even in traditional areas where minors are found incompetent, "a minor can enter into contracts, buy and sell property and legally do any number of things which a human being is capable of doing."[21] For his own protection, however, the law makes it possible for the minor to avoid liabilities for a number of such actions by disaffirming them when he reaches majority.[22] Even this ability to avoid liability may be *17 lost when a guardian is appointed for the minor.[23]
We have recognized the trend of expanding juvenile competency. In rejecting an argument that "infancy renders all waivers automatically void,"[24] we considered the Alaska statute governing the age of majority, AS 25.20.010. AS 25.20.010 provides that upon reaching majority, a person
has control of his own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute.
We stated:
This statute does not carry a broad negative implication... . The age of majority statute does not imply a legislative judgment that infants are incompetent in all things; it means only that persons above the statutory age minimum are competent in all things except otherwise provided. No statute prohibits waiver, by infants of procedural rights in children's court, so the issue is one of common law and constitutional law.[25]
Juvenile proceedings have some of the characteristics of both civil and criminal actions. Whether regarded from the stand-point of a civil or criminal proceeding, however, we believe that a juvenile may waive the right to be discharged from treatment at age nineteen or, put another way, give a binding consent to additional supervision.
It is clear that juveniles can waive constitutional criminal rights and be bound by that waiver.[26] Although the right involved here is not of constitutional dimension, it certainly seems to follow that if a minor can waive a constitutional right, the right to have supervision terminated can be waived. Furthermore, several cases have held that juveniles may waive procedural rights to which this right seems analogous.
We have stated that "[n]o statute prohibits waivers by infants of procedural rights in children's court." R.L.R. 487 P.2d at 34. We held that: (1) a minor can affirmatively assert the right to trial by jury although "the child should first consult with his counsel and his parents or guardian when appropriate ...," id. at 35; (2) a minor may waive the right to a public trial unless that choice may be adverse to his own interests in which case a guardian ad litem shall be appointed, id. at 39; and (3) a minor accompanied by counsel may waive the jurisdictional requirement of Children's Rule 10 that service of summons be sent to the juvenile and his parents or guardian. Id. at 41.
Other courts have held that juveniles may waive or consent to procedural and jurisdictional requirements. In United States v. Williams, 459 F.2d 903 (2d Cir.1972), the court considered the then effective version of 18 U.S.C. § 5032, which provided that a minor had to give his consent to be tried as a juvenile. The court discussed the requirements for the juvenile's consent to be binding, stating:
[I]n order to make an intelligent waiver of his rights under the Act and knowingly refuse to consent, a juvenile must in some manner be fully apprised of his rights and the respective consequences of the proceeding under the Juvenile Delinquency Act and as an adult.
459 F.2d at 904.[27]
*18 Several courts have held that a juvenile can waive his right to be treated as a juvenile and elect to be treated as an adult.[28]
We conclude that a minor may bindingly consent to an additional period of supervision as provided by AS 47.10.080(b)(1). In determining the effect to be given to such consent, the court should consider the age and maturity of the juvenile and whether he has the advice of counsel. To protect a minor from making a decision adverse to his own interests, a guardian ad litem may be appointed.
Here, consent was given by a juvenile who the record indicates had the capacity to understand the ramifications of the decision. He was represented by counsel, had a guardian ad litem appointed and had the opportunity to confer with his parents. The trial court did not err in considering such a consent to be binding as applied to the period available for treatment. To the extent that F.S.[29] is inconsistent with this opinion, it is overruled.[30]
The order of the trial court refusing to waive juvenile jurisdiction is affirmed.[31]
AFFIRMED.
NOTES
[1] The state filed a motion for reconsideration which was likewise denied.
[2] AS 47.10.060(a) states:

If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as if he were an adult.
Children's Rule 3(f) provides:
If probable cause is established at the hearing for believing that the child committed the act with which he was charged in the petition and which if committed by an adult would constitute a crime and the child is not amenable to the treatment provided under AS 47.10 Article 1 and under these rules, the court shall issue an order waiving and terminating the treatment provided thereunder and close the children's case. The child may then be prosecuted for the act or acts charged in the petition as if he were an adult.
[3] He was born on November 1, 1961.
[4] A memorandum decision was subsequently issued on June 1, 1979.
[5] Judge Ripley stated:

I believe the 3 year treatment option is essential to his rehabilitation. I believe he can now consent, this came into the picture at the motion of the child on the advice of counsel and we've had the appointment of the guardian. She's inquired of him, I've inquired of him, even in overstating the option as I recently did, I think that  I am convinced that it is a legitimate waiver. I take into account the facts that I have already mentioned in terms of present counsel and the guardian and the ability to consult with parents and friends. Take into account further the psychological information we have about [F.L.A.] in that he does grasp concepts regularly, he is not a dummy, appears to be fairly intelligent, quick to grasp and that's a matter which the psychologists and psychiatrists tend to agree. Based upon all those things I find that his waiver is knowing and exercised now, free from compulsion and with a full knowledge of the consequences.
[6] AS 47.10.060(d) states in part:

A minor is unamenable to treatment under this chapter if he probably cannot be rehabilitated by treatment under this chapter before he reaches 20 years of age.
[7] 586 P.2d at 610.
[8] Id. at 611.
[9] See AS 47.10.080(b)(1) quoted in the text supra.
[10] 586 P.2d at 611.
[11] 538 P.2d at 1214 n. 1.
[12] Washington statutes allowing care as a juvenile beyond age eighteen are now codified in RCW 13.40.300.
[13] Note, Waiver of Constitutional Rights by Minors: A Question of Law or Fact, 19 Hastings L.J. 223, 224 (1967) (hereinafter cited as Waiver).
[14] A minor does not have the legal capacity to contract. Application of Cochran, 434 F. Supp. 1207, 1211 (D.Neb. 1977); Jones v. State, 119 Ga. App. 105, 166 S.E.2d 617, 619 (1969); Longstreet v. Morey, 49 Ill. App.3d 720, 7 Ill.Dec. 441, 364 N.E.2d 602 (1977); Navarro v. Kohlmeyer & Co., 264 So.2d 691, 692 (La. App. 1972); Petition of Yonnone, 72 Misc.2d 579, 339 N.Y.S.2d 212, 214 (N.Y.Surrogate Ct. 1972). See R.L.R. v. State, 487 P.2d 27, 34 (Alaska 1971). A minor cannot alone convey property, Kenwood Savings and Loan Assoc. v. Williams, 8 Ohio Misc. 23, 220 N.E.2d 582, 584 (1966), Waiver supra note 13 at 224, although he may hold property. R.L.R., 487 P.2d at 34. Generally, a minor cannot borrow money or execute a mortgage. Kenwood, 220 N.E.2d at 584. In some circumstances, a juvenile cannot consent to a medical operation. Bonner v. Moran, 75 U.S. App.D.C. 156, 126 F.2d 121 (D.C. Cir.1941). But see, Note, Minor's Consent to Medical Care: The Constitutional Issue in Oklahoma, 12 Tulsa L.Rev. 512 (1977) (hereinafter cited as Medical Care). A minor cannot maintain a suit. Waiver supra note 13.
[15] See Waiver supra note 13 at 224; Note, Waiver in Juvenile Court, 68 Colum.L.Rev. 1149, 1152 (1968); R.L.R. v. State, 487 P.2d at 34.
[16] Id.
[17] In re K.W.B., 500 S.W.2d 275, 279 (Mo. App. 1973).
[18] People v. Gomez, 252 Cal. App. 844, 60 Cal. Rptr. 881, 885 (1967) (a portion of this opinion not relevant to the discussion here was overruled in People v. Tribble, 4 Cal.3d 826, 94 Cal. Rptr. 613, 484 P.2d 589 (1971)). See R.L.R. v. State, 487 P.2d at 34, where this court disposed of "the argument that infancy renders all waivers automatically void."
[19] Medical Care supra note 14 at 527.
[20] R.L.R., 487 P.2d at 34.
[21] Ballard v. Buist, 8 Utah 2d 308, 333 P.2d 1071, 1073 (1959); R.L.R., 487 P.2d at 34.
[22] Id.
[23] See Kenwood Savings, 220 N.E.2d at 584; Waiver supra note 13 at 224.
[24] R.L.R., 487 P.2d at 34.
[25] Id.
[26] Most courts simply consider age as one factor in the totality of the circumstances when determining whether the minor knowingly and intelligently waives his constitutional rights. See Quick v. State, 599 P.2d 712, 718-20 (Alaska 1979); R.L.R., 487 P.2d at 33-34, and authorities cited therein. See also In re K.W.B., 500 S.W.2d 275, 279 (Mo. App. 1973). R.L.R. apparently adopted this view. Id. at 34. Another view holds infants incompetent to waive rights without advice or waiver by a guardian ad litem or a friendly adult. Id. at 33.
[27] See also United States v. Jenkins, 496 F.2d 57, 75-76 (2d Cir.1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975). 18 U.S.C. § 5032 was extensively revised by Pub. L.No. 93-415 § 502, 88 Stat. 1134 (1974). The law now provides that a juvenile will automatically be tried as a juvenile unless he requests to be tried as a adult. In certain cases, the attorney general may request a transfer to try the individual as an adult.
[28] A California appellate court explained:

Since both statute law and court decisions recognize that juvenile procedure is intended for the benefit of the accused, ... it follows that its benefits are waivable by the accused in the same way that procedural rights are waivable in criminal prosecutions.
Rucker v. Superior Court, 75 Cal. App.3d 197, 141 Cal. Rptr. 900, 902-03 (1977); see also Merritt v. State, 333 So.2d 915, 918 (Ala.Cr.App. 1976), cert. denied, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1977); People v. Shaw, 3 Ill. App.3d 1096, 279 N.E.2d 729, 731 (1972); People v. Thomas, 34 Ill. App.3d 1002, 341 N.E.2d 178, 180-81 (1976).
Most courts have required, however, that the trial court explain to the juvenile that he had the right to be treated as a juvenile and that an attorney and/or parent be present. See McFarlin v. State, 554 P.2d 56, 61 (Okl.Cr.App. 1976). The concern is, as the United States Supreme Court noted in another context in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 3044, 61 L.Ed.2d 797, 808 (1979), that
during the formative years of childhood and adolescence, minors often lack the experience, perspective and judgment to recognize and avoid choices that could be detrimental to them. [Footnote omitted.]
[29] In F.S., the juvenile not only committed a horrible crime but had a lengthy history of violations of criminal laws and a failure to respond to treatment. See 586 P.2d at 614, 615 & n. 28. Our decision that F.S. was not amenable to treatment as a juvenile would not be altered by our present holding.
[30] The recent comment of Justice Rehnquist in Califano v. Boles, 443 U.S. 282, 294, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541, 551 n. 12 (1979), seems apropos:

There is obviously a significant difference between this interpretation of the statutory purpose and that subscribed to by the author of this opinion in his separate concurrence in Weinburger v. Wiesenfeld, 420 U.S. 636, 655, 95 S.Ct. 1225, 1236, 43 L.Ed.2d 514 (1975). To the extent that these interpretations conflict, the author feels he can do no better than quote Mr. Justice Jackson, concurring in McGrath v. Kristensen, 340 U.S. 162, 177-178, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950): Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others. See Chief Justice Taney, License Cases, 5 How. 504, 12 L.Ed. 256, recanting views he had pressed upon the Court as Attorney General of Maryland in Brown v. Maryland, 12 Wheat. 419, 6 L.Ed. 678. Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, "The matter does not appear to me now as it appears to have appeared to me then." Andrews v. Styrap, 26 L.T.R. (N.S.) 704, 706. And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: "My own error, however, can furnish no ground for its being adopted by this Court... ." United States v. Gooding, 12 Wheat. 460, 478, 6 L.Ed. 693... . If there are other ways of gracefully and goodnaturedly surrendering former views to a better considered position, I invoke them all.
[31] The advocacy, legal research and briefing displayed in this matter, as well as the trial court's carefully reasoned decision in a most difficult case, are deserving of high praise.