Frederick A. SHEWEY, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–1924.

Court of Appeals of Alaska.

July 10, 1987.

Jeffrey F. Sauer, Asst. Public Defender, Ketchikan, and Dana Fabe, Public Defender, Anchorage, for appellant.

Mary Anne Henry, Dist. Atty., Ketchikan, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

SINGLETON, Judge.

Frederick A. Shewey, Jr., appeals an order of the superior court revoking his probation and directing that he serve the five years remaining on his fifteen-year sentence for second-degree murder. We affirm.

On January 31, 1978, Shewey, age seventeen, sexually assaulted and killed G.G., a nine-year-old girl. Superior Court Judge Thomas B. Stewart denied the state's petition seeking a waiver of juvenile jurisdiction so that Shewey could be tried as an adult. AS 47.10.060; Alaska R. Children's P. 3. The state appealed and the supreme court reversed, directing that Shewey be waived for prosecution as an adult. *In re F.S.*, 586 P.2d 607 (Alaska 1978), *overruled on other grounds, State v. F.L.A.*, 608 P.2d 12 (Alaska 1980). Shewey pled guilty to a charge of second-degree murder. Former AS 11.15.030.[1]

---

1. AS 11.15.030 provided:

Except as provided in §§ 10 [first-degree murder] and 20 [causing death by obstructing or injuring railroad or aircraft] of this chapter, a person who purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life.

Judge Stewart took into account Shewey's youth and the extensive record regarding Shewey's amenability to treatment, and sentenced Shewey to a term of fifteen years with five years suspended. Shewey was incarcerated from February 1, 1978, through December 18, 1984. The majority of his time was spent in the federal correctional system in facilities such as Springfield, Terminal Island and Englewood. His progress in the institutions was good. Work, program and dormitory reports were all above average. While at Terminal Island, Shewey worked as a printer in the business office and in a furniture factory where his performance was considered to be above average. His relationship with staff at each institution was reportedly good. Shewey undertook educational courses, resulting in the award of a G.E.D., and completed a course in vocational training in masonry. He was also involved in individual psychotherapy sessions.

Upon his release, Shewey moved to Toledo, Oregon, where his parents then resided. Oregon correctional officials assumed responsibility for Shewey's supervision on probation.[2] Shewey apparently had a great deal of difficulty finding employment upon his release from prison. In violation of probation, he drank regularly and apparently used marijuana. The record reflects that during this time Shewey was obtaining out-patient sex-offender therapy from Dr. William McIvar. The presentence report indicates that Dr. McIvar did not provide a written evaluation to the Oregon probation authorities, but informally indicated to them that Shewey was a "time bomb" and a dangerous individual. Shewey obtained employment at a restaurant from September 1985 until early January 1986, at which time he was fired, allegedly for a "bad attitude."

On February 28, 1986, Shewey pled guilty in Oregon to a charge of criminal mischief in the first degree.[3] He was given credit for time served (forty-seven days), required to pay $300 restitution, a $50-victim-assessment fee, and was placed on unsupervised probation for three years. Shewey's conviction was based on an incident on January 12, 1986, when he threw a street sign through a window of an electronics store in Eugene, Oregon. The police officers asked Shewey if his temper had gotten the better of him, causing him to break the window. Shewey replied, "yes," stating that he was unable to find employment since being released from prison and as a result he had broken the window as a means of striking back.

After Oregon correctional authorities declined to provide further supervision of Shewey, he was returned to Alaska for

---

**2.** Shewey was not given early parole. Apparently he flat-timed his sentence taking into account 310 days statutory good time and 830 days of meritorious good time. He was on mandatory release at the time of his revocation.

**3.** Oregon Revised Statute § 164.365 provides in part:

(1) A person commits the crime of criminal mischief in the first degree who, with intent to damage property, and having no right to do so nor reasonable ground to believe that the person has such right, damages or destroys property of another:
(a) In an amount exceeding $200.
. . . .
(3) Criminal mischief in the first degree is a Class C felony.
This Oregon Statute should be compared with AS 11.46.482–.484. Alaska Statute 11.46.482 provides in relevant part:
(a) A person commits the crime of criminal mischief in the second degree if, having no right to do so or any reasonable ground to believe the person has such a right,
(1) with intent to damage property of another, the person damages property of another in an amount of $500 or more.

. . . .
(b) Criminal mischief in the second degree is a class C felony.
Alaska Statute 11.46.484 provides in part:
(a) A person commits the crime of criminal mischief in the third degree, if having no right to do so or any reasonable grounds to believe the person has such a right
(1) with intent to damage property of another, the person damages property of another in any amount of $50 or more but less than $500.

. . . .
(b) Except as provided in (c) of this section [second and subsequent offenders who are guilty of a class C felony], criminal mischief in the third degree is a class A misdemeanor.

possible probation revocation. In order to better determine if Shewey's probation should be revoked, the trial court requested an updated psychological report. Shewey was then examined by Dr. Anthony M. Mander, a licensed clinical psychologist. Dr. Mander's conclusions were:

> The results of the present evaluation suggest that Mr. Shewey suffers from a severe Personality Disorder. There is no evidence of major affective disorder, organic brain dysfunction or psychotic illness. The personality structure of this man is basically Anti-Social with Narcissistic Tendencies. He is aggressive and impulsive and presents, I believe, a significant risk of danger to the community. At the present time he appears to be under a greater stress than ordinarily might be true, which makes him even more likely to act out in an impulsive manner. Comparison of present test findings to past evaluations suggest that little progress has been made in the difficulties which brought him into the correctional setting in the first place.

Superior Court Judge Thomas E. Schulz revoked Shewey's probation and directed that he serve the remaining five years on his sentence.

■ Shewey first argues that Judge Schulz prejudged the probation revocation because he felt that Shewey had initially received too lenient a sentence on the second-degree murder charge. The record does not bear out this claim. The hearing on the probation revocation was held on August 1, 1986. At that time, Judge Schulz indicated that he was thoroughly familiar with the case, having reviewed the updated presentence report, heard the parties' arguments and given Shewey his right to allocution. The court elected to reserve judgment, however, until an updated psychological report could be obtained. The matter was therefore continued until December 15, 1986, to permit Dr. Mander to interview Shewey. While Judge Schulz did indicate that Shewey had initially received a lenient sentence, he did not rush to judgment, but in fact delayed ruling on the

revocation until the psychological report was prepared. We find no error in Judge Schulz's handling of the probation revocation.

■ Shewey next argues that it is unreasonable to revoke his probation and require that he serve five additional years solely on the basis of a criminal mischief conviction in Oregon, particularly for conduct which would have been a misdemeanor had it occurred in Alaska. In Judge Schulz's view however, the incident in Oregon served to validate the psychological report which indicated that Shewey was still extremely dangerous and that his years of incarceration, despite consistent good conduct reports, had not served to ameliorate this dangerousness.

Given Shewey's background, the seriousness of his initial offense, the significance of the Oregon incident as a predictor of future dangerousness, and the trial court's consideration of other relevant sentencing factors, we conclude that Judge Schulz did not err in revoking Shewey's probation and requiring him to serve the previously suspended five years.[4] The sentence imposed was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment of the superior court is AFFIRMED.

---

4. *See, e.g., State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).